[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REQUESTS BY DEFENDANT FOR EXAMINATIONS
This case involves an accident that occurred October 5, 1988. The plaintiff claims to have suffered post-traumatic brain injury which has led to migraines, depression, post-concussional syndrome, memory dysfunction, temporal lobe epilepsy and multiple personality disorders. The case was claimed to the trial list March 19, 1991 and has been set down for trial on April 5, 1993.
The number of expert witnesses disclosed by the plaintiff is 47. In June of 1992, Dr. Sarfaty conducted a neuropsychological exam of the plaintiff for the defendants and he was disclosed as an expert witness on September 24, 1992.
From the end of February to the end of September 1993 the defendants have taken the depositions of seventeen of the plaintiff's expert witnesses and one lay witness.
A pretrial was held with Judge O'Neill on February 26, 1993, where, among other orders, the defendants were ordered to disclose all expert witnesses within two weeks after the last deposition of the plaintiff's experts. Three expert depositions remain to be taken by the defendants.
The defendants have requested six examinations of the plaintiff, two physical examinations and four psychological examinations. The plaintiff objects to the examinations on the grounds that (1) the examinations should not be ordered unless the defendants were required to pay for travel expenses; (2) they are untimely under Practice Book 220; (3) they are unreasonable; and (4) the plaintiff opposes the examiners. CT Page 10498
1.
The defendants have agreed, and it would seem fair under the circumstances, that if the examinations are ordered, the defendants should reimburse her for the travel expenses, air fare and hotel expenses.
2.
The plaintiff places great reliance on Sturdivant v. Yale-New Haven Hospital, 2 Conn. App. 103 (1984), Perez v. Mt. Sinai Hospital, 1 Conn. App. 121 (1980), and Perry v. Hospital of St. Raphael, 17 Conn. App. 121 (1988) in making her argument that the request for examinations are untimely. Sturdivant and Perez both involve situations where counsel did not disclose the expert until the eve of trial in situations where it was apparent that the expert had been known to and consulted by the lawyer for long periods of time before the disclosure to opposing counsel. In Perry the lawyer waited until two weeks before trial to disclose the facts and opinions to which the expert was to testify.
This is not what is involved in this case. Trial is four months in the future. Complicated claims and numerous experts have been disclosed by the plaintiff. It would appear that the defendants have diligently tried to depose these experts over a period of several months and there is no claim that they have been dilatory in their pursuit of this discovery vehicle.
Three depositions remain and Judge O'Neill apparently ordered the defendants to disclose their experts within two weeks after their completion of depositions of the plaintiff's experts. The defendants appear to be operating within the time limits of Judge O'Neill's order and the court can allow disclosure of experts after the 120-day limit. The judge's order is understandable in light of the complexity of the medical and psychological claims made and the number of experts disclosed by the plaintiff. The defendant represents that the plaintiff herself disclosed, apparently without objection, nine experts long after the sixty-day disclosure requirements in Practice Book 220D.
It is not uncommon for defendants to ask for a waiver CT Page 10499 of the 120-day rule of P.B. 220D until some or all of the plaintiff's experts have been deposed. Absent a claim that the depositions are being conducted in a dilatory manner allowance of defense examinations and disclosure beyond the 120-day period should be permitted, where, as here, defense counsel all along indicated they would present expert testimony and the examinations are requested several months before trial.
3.
In the brief filed and argument made by the plaintiff, the claim is made that the defendants' request for new examinations is unreasonable. The plaintiff's position seems to be that the defendants' did have Dr. Sarfaty conduct a neuropsychological examination of the plaintiff in June of 1992; therefore, further examinations cannot be permitted. The defendants have not shown good cause and thus a second examination or series thereof would be "unconscionable" and an "invasion of the [plaintiff's] personal privacy."
In a case where a second examination is requested, the cases seem to be struggling, though not explicitly, with the fact that Practice Book 229 does not by specific language authorize more than one examination by one physician; see commentary by Moller Horton, Connecticut Practice Vol. 1, p. 408. Interestingly, 52-178 of the general statutes does seem to authorize more than one examination.
The statute in relevant part reads as follows:
 "In any action to recover damages for personal injuries, the court or judge may order the plaintiff to submit to a physical examination by one or more physicians or surgeons." (Emphasis added).
In Lombardo v. Holdridge, 40 Conn. Sup. 205 (Berdon, J., 1985), the court indicated it had the power to order a second examination referring specifically to the statute and set forth a "good cause" requirement before such a request could be granted. CT Page 10500
As Moller Horton note in personal injury cases, "good cause" language in P.B. 229 is nonexistent. It is therefore difficult to understand whether the Lombardo court purports to act pursuant to statutory authority, its interpretation of P.B. 229, or by reason of some inherent authority to order new or second physical examinations where appropriate. State v. Anonymous, 32 Conn. Sup. 306
(1976).
These analytical problems can be avoided if one reads the practice book section and the statute together in an effort to see if they really conflict with one another. Although P.B. 229 does not explicitly authorize second examinations neither does it forbid such a practice by its language. In certain cases fairness would dictate such examinations should be permitted. It would seem only fair to interpret our practice book and statutory scheme to permit second examinations by defendants' experts where its first examination is followed by additional plaintiff's expert examinations, especially where these examinations raise new issues, refine previous claims, or might be seen as more relevant to the jury because conducted closer to the time of trial.
Viewing Practice Book 229 in this way there is no need to read a "good cause" requirement into that section of our practice book. Plaintiff can be protected against inconvenience and harassment by resorting to a motion for a protective order or simply objecting to the request for such examinations on the ground of fairness given the fact that such examinations might be intrusions on a person's privacy under the circumstances of a particular case.
Thus, in Lombardo the facts indicated that although the plaintiff was examined by the defendants' orthopedic surgeon, they wanted an examination by a neurological surgeon merely because the plaintiff had also had both orthopedic and neurosurgeons treating him. The plaintiff was examined by its neurological surgeon only after a referral was made by its orthopedic surgeon to confirm his diagnosis. The defendant's orthopedic surgeon never requested an examination by a neurological surgeon or indicated he needed another physician to confirm his diagnosis which seemed to favor the plaintiff. The court reasoned that because the defendant did not like the CT Page 10501 results of the examination by its own doctor, that would not justify having the plaintiff submit to another examination. Cf. Henderson v. Gardner,5 Conn. L. Rptr. 283 (1991).
A court dealing with the facts presented by Lombardo certainly has the power to bar a second examination without having to read a "good cause" requirement into P.B. 229 thereby creating presumptions and burdens not warranted by practice book or statute.
The plaintiff also cites Smith v. Christie,3 Conn. L. Rptr. 125, 126 (1991) apparently for the proposition that in deciding whether requests for new or additional examinations are reasonable, some weight should be given by the court to the fact that psychiatric and neurological examinations are involved. It is the plaintiff that injected these issues into the case and now seeks substantial damages. The practice book does not make any distinction between the type of physician examination requested and this court again refuses to read into P.B. 229 language or presumptions that are not stated. Certainly, in some cases, requests for additional neurological or psychiatric examinations can be uncalled for and thus be a tool of harassment but the same can be said for additional ordinary medical examinations where they are not fairly warranted by the circumstances of the case. See Lombardo v. Holdridge, supra.
In Smith the court barred the requested examinations not because of the type of examination requested; the defendant had filed a counterclaim and the plaintiff was requesting a mental examination. In turning down the request, the court noted the defendant had not disclosed any mental expert that would support her claim of emotional distress, and the defendant apparently did not intend to produce any such expert. The plaintiff also said he wanted the mental examination "to help him discover the motivations which inspired her alleged conduct."
Thus, the court's ruling was based not on the type of examination requested but on the fact that any information garnered from a mental examination would not produce anything "material" to the claim being made and the possible defenses against it. But "materiality" is a CT Page 10502 requirement for any type of discovery under our rules (P.B. 218) and Smith can better be understood only as an application of that requirement.
In this case it would be unfair not to allow the defendants' request for additional examinations. The plaintiff has been treated by practitioners in many fields and has disclosed some forty-seven experts with a variety of different specialties. A number of the disclosures occurred after the plaintiff was examined by the defendants' expert, Dr. Sarfaty, and most of the plaintiff's experts specialize in different fields of medicine. Some four months remain before trial is to start in April, and the defendants apparently requested these examinations informally of the plaintiff between the end of September and November 1, 1993. The defendants' request is not part of any grand dilatory scheme — between February 26, 1993 and September 28, 1993 the defendants took the depositions of seventeen plaintiff's experts, including two who were not disclosed until June of 1993. According to the defendants, as of November 1, 1993 only three more depositions remain to be taken or completed by the defendant. None of these factual assertions were disputed by the plaintiff in their memorandum or in the court's memory of their oral argument.
The requested examinations are certainly material to this action and under all the circumstances this request for additional examinations by the defendants cannot be said to be unreasonable.
4.
The plaintiff also objects to an examination by any of the physicians the defendants have scheduled to do the exams requested. It particularly objects to examinations by two physicians. The plaintiff suggests that under P.B. 229 it has a right to refuse an examination by a physician proposed by the defendant. The court will now discuss the plaintiff's claims.
The court will follow its decision in Fabozzi v. National Railroad Passenger Corp., 3 CSCR 899 (1988). The later cases of Shepherd-Gotch v., Chioccola,6 Conn. L. Rptr. 371 (1992) and Pinto v. Walker, 5 CSCR 159 (1990) are CT Page 10503 in accord; Agro v. Sender, 3 Conn. L. Rptr. 315 (1991) disagrees but simply adopts Mulligan v. Goodrich,28 Conn. Sup. 11 (1968) which was discussed in Fabozzi.
Under the reasoning of Fabozzi, a court has the inherent power to decide whether a plaintiff's objection to a particular physician is unreasonable. It is not unreasonable as stated in that case for a plaintiff to so object because the physician designated by the defendant devotes a large portion of his or her practice to examining plaintiffs for insurance companies. Also, Plaintiff's counsel could reasonably object if time or distance factors might make it burdensome for the client to see a particular defendant's physician and the plaintiff submits a list of local qualified physicians to whose examination the plaintiff is willing to submit. CF. Shepherd-Gotch v. Chiccola, supra. The legislative history of 52a-178 authorizing physical examinations and cited in Le Blanc v. Cambo, 26 Conn. Sup. 338 (1960) suggests other possible "good faith" reasons — plaintiff counsel's prior past experience or relationship with a particular physician or the experience of others. There need not be much but there at least must be some good faith reason given for an objection to an examination by a particular physician.
In this case the plaintiff objects to examinations by two doctors, Borden and Merikangas, on the ground that they devote a "large portion of their practice to performing examinations of plaintiffs on behalf of insurance companies." Dr. Borden intends to do an occupational assessment and one of the exams Dr. Merikangas is scheduled to do is a neurological examination. At this juncture the court accepts the plaintiff's representations and is not persuaded by the defendants' argument that one of these doctors spends a majority of his time giving testimony as an expert for plaintiffs. That fact still does not preclude a claim that the doctor devotes substantial time to doing exams for insurance companies and that is sufficient reason for allowing a plaintiff to object to an examination by a physician.
The defendants also make the novel argument that pursuant to the language of P.B. 229 a plaintiff can only object to "physical examination" by a particular physician. Several of the exams requested involved "mental CT Page 10504 examinations" including the one by Dr. Borden who specializes in rehabilitation therapy and a separate psychiatric examination by the same Dr. Merikangas mentioned above. It is true that the practice book section makes a distinction between physical and mental examinations and as noted only explicitly allows the plaintiff to object to a physician who is to do a physical exam. The defendants argue there is a good reason for this distinction since physical examinations involve physical contact which is more offensive to people and ordering a mental examination is "no more offensive than ordering a person to testify." The court cannot accept this reasoning and cannot help but feel that the failure to conclude "mental" examinations explicitly in the sentence allowing plaintiffs to object to exams by particular physicians is no more than an oversight. Mental examinations can be just as much if not more of an invasion of privacy as physical examinations. The court believes that a plaintiff must provide a reason for objecting to a mental examination by a particular physician and if the reason is made in good faith and not made to obstruct the defendant's discovery rights, the objection should be sustained. The fact that a particular physician devotes a substantial portion of his time doing examinations for insurance companies is a sufficient reason. That is, the same reasons which would form an appropriate basis to object to a particular physician doing a medical examination would apply to an objection to a particular physician doing a mental examination. The court bases its position on what it believes to be a common sense reading of P.B. 229, its inherent power to regulate procedure under that section, and also on its power to issue protective orders under P.B. 221. As to Dr. Borden and Dr. Merikangas, the court sustains the plaintiff's objection to their performing physical or mental examinations.
However, the court rejects all other objections made by the plaintiff to other doctors performing the requested examinations. The plaintiff gives absolutely no basis or reason for its objections. The plaintiff has utilized almost four dozen experts, has disclosed two as late as June of this year, and trial is only a few months away. Under these circumstances the plaintiff should not now be permitted to forestall the defendants' right to prepare for trial by objecting to certain physicians without even CT Page 10505 offering a reason.
As regards any examinations that were to be performed by Dr. Borden and Dr. Merikangas, the court suggests counsel exchange lists of physicians and try to agree on substitutes for the named physicians. If the parties cannot agree, the matter may be returned to court.
Corradino, J.